WEBER-KING LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22574. Promulgated September 26, 1930.

*A. O. King, Esq.,* and *George Bailleo, C. P. A.,* for the petitioner.
*J. Arthur Adams, Esq.,* for the respondent.

OPINION.

LOVE: The petitioner in this proceeding complains of the respondent's determination that it was not affiliated with the Farmers Rice Milling Co. for the entire year 1920. The respondent has found that the two companies were affiliated for the period November 1 to December 31, 1920. In denying the claimed affiliation for the period January 1 to October 31, 1920, the deficiency letter states:

As no control of "voting rights of stock" has been shown over the 175 shares 17.5% of the stock of the Farmers Rice Milling Company owned by H. W. Lanz, your contention that the Weber-King Lumber Company and the Farmers Rice Milling Company were affiliated during the entire year 1920 has been denied.

Neither Lanz, nor W. J. Uncle, who owned 10 shares (1 per cent) of the stock of the Rice Co., was a stockholder of the petitioner.

Petitioner further complains of the respondent's requirement that the alleged affiliates file separate returns for the period January 1 to October 31, 1920, and a consolidated return for the remainder of that calendar year. Adjudication of this complaint is, of course, dependent upon our determination of the first issue.

Petitioner contends, first, that it was affiliated with the Rice Co. for the entire year 1920, because the stock of the two companies was owned or controlled by the same interests. Petitioner also contends that if the two companies were not affiliated for the entire year, they were affiliated for the period February 6 to December 31, 1920, rather than the period November 1 to December 31, 1920, as determined by the respondent. This contention is founded upon Weber's purchase of 142½ shares of the stock of the Rice Co. held by Lanz, the evidence being that such stock was purchased by Weber for the Powell Co. on February 6, 1920.

We shall first consider the question of affiliation for the entire year 1920, discussing it without regard to the change in ownership of a portion of the stock owned by Lanz in the Rice Co. on February 6, 1920. The applicable statute, section 240 (b) of the Revenue Act of 1918, provides:

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

It appears that from January 15 until October 31, 1920, there were 31 stockholders of petitioner and that their respective interests in petitioner remained unchanged during that period. Eighteen of these stockholders, owning 54.25 per cent of petitioner's stock, owned during the period January 15 to February 4, 1920, 81.50 per cent of the stock of the Rice Co., and during the period February 4, to October 31, 1920, 21 of petitioner's stockholders owned 81.50 per cent of the stock of the Rice Co. During the periods mentioned, the Powell Lumber Co., owning 39.74 per cent of petitioner's stock, was not a stockholder of the Rice Co. But during the entire period January 15 to October 31, 1920, 9 of the 18 persons first above mentioned as stockholders of petitioner owned 96.40 per cent of the stock of the Powell Co.

Summarized, therefore, from 18 to 21 persons owned 54.25 per cent of the stock of petitioner, and 9 of these persons owned 96.40 per cent of the stock of the Powell Co., which in turn owned 39.54 per cent of the stock of petitioner. Regarding the above mentioned owners of 54.25 per cent of the stock, and the Powell Co. owning 39.54 per cent, as "the same interests," then 93.99 per cent of

petitioner's stock and 81.50 per cent of the Rice Co.'s stock was owned by these "interests."

The question now presented is whether or not ownership or control by the "same interests" of 93.99 per cent of the stock of petitioner, and 81.50 per cent of the stock of the Rice Co. is sufficient, under the circumstances of this case, to constitute petitioner and the Rice Co. affiliated corporations within the intendment of section 240 of the Revenue Act of 1918.

Petitioner is a lumber company engaged in the operation of sawmills; the Rice Co. is engaged in milling and dealing in rice. There has been no contention that the two companies form an economic business unit. While it does appear that W. P. Weber and Geo. M. King were the dominating figures in the affairs of each company; that they pledged their personal credit for the Rice Co.; that the two companies, and several others, had offices together in Lake Charles, and that obligations of the Rice Co. were sometimes taken up by petitioner and/or the Powell Co., we do not believe that any or all of these factors appear in this case to a degree warranting the assignment to them of any influence in our determination of the issue. We think our determination must rest upon the control of the 175 shares of stock of the Rice Co. held by Lanz. The respondent's action was predicated upon that factor and the petitioner's evidence has been principally directed to it.

As stated in its brief, petitioner "relies upon the fact that W. P. Weber and George M. King controlled the stock of H. W. Lanz by reason of the fact that he acquired said stock at their pleasure and invitation, and that the said H. W. Lanz during that time was employed by the Prairie Farm Lands Company, from which he gained his livelihood, of which company George M. King and W. P. Weber and B. M. Talbot were directors and officers"; or, in other words, "petitioner claims that the principal stockholders of the two companies, namely, W. P. Weber and George M. King, controlled the said stock of H. W. Lanz." This alleged "control" it appears is founded principally upon the fact that Weber, King, and Talbot, as directors of the Prairie Co., controlled the job of Lanz, who was secretary-treasurer, manager, and a director of that company, at a salary of $5,000 per year. Petitioner argues that Lanz's "job meant more to him than his investment in the Rice Milling Co."

The extensive business interests of Weber and King in the vicinity of Lake Charles are amply demonstrated by the record. They were, no doubt, dominating personalities in the industrial activities of the community. It may be true that they could have autocratically persuaded minor characters in those industrial activities to cooperate in one enterprise under penalty of losing their means of livelihood

in another. It is even reasonable to assume that such minor characters, aware of their positions, would ordinarily cooperate readily and so merit the beneficence of those in whose hands their material destiny lay.

But the cooperation secured by such considerations can scarcely be considered a matter of "right" by those who obtain it, nor in our opinion, is it necessarily an assured thing. Lanz, it seems true, never opposed King and Weber, but whether this was due to his acknowledgment of their control of his actions or to a belief that it was to his interest as a stockholder to let successful men guide and guard his financial interest in the Rice Co., we do not know. There is nothing to indicate that Lanz did not, or could not, vote his stock in the Rice Co. as he saw fit, and if he concurred in the policies of Weber and King, it may well have been because he personally approved those policies and not merely because they were the policies of Weber and King.

Considering all the circumstances, we are of opinion that while Lanz owned 175 shares (17.50 per cent) of the stock of the Rice Co. and none of the petitioner's stock, the two companies were not controlled by the "same interests" within the intendment of statute, and, therefore, were not entitled to file affiliated returns.

Petitioner, as another and further means of establishing its right to affiliation with the Rice Co., has cited various provisions of Act 267 of the Acts of the Legislature of Louisiana for the year 1914. (1 Wolff's Compiled Statutes of Louisiana, p. 305.) Petitioner and the Rice Co. were organized under this act. The act contains various provisions relative to the control which stockholders exercise over corporations organized under it. It prescribes the control that a stockholder or stockholders of certain percentages of stock may exercise over such a corporation, the percentages of stock necessary to control different acts of the corporation differing with the nature of the act. Petitioner contends that under the provisions of the act mentioned, the control of 81.50 per cent of the stock of the Rice Co. by a group of persons gives them control of the company, and we agree that this appears to be so under the Louisiana law.

In this proceeding, however, we are dealing with a Federal statute, and as we interpret its provisions, the ownership by stockholders of the petitioner of 81.50 per cent of the stock of the Rice Co., under the circumstances herein shown, does not satisfy the prerequisites for affiliation of the two companies. Provisions of State laws, such as are herein mentioned, are not competent to effect the "control" necessary for affiliation of corporations under the Federal taxing acts.

We turn now to consideration of petitioner's contention that if ownership by the same interests of 93.99 per cent of its stock and

81.50 per cent of the stock of the Rice Co. (plus the alleged control of the 17.50 per cent of stock held by Lanz) does not entitle the two companies to affiliation for the entire year 1920, then affiliation should be allowed from the date that Weber purchased 142½ shares of Lanz's stock for the Powell Co., i. e., February 6, 1920, rather than from the date that the said 142½ shares were recorded in the name of the Powell Co., i. e., October 31, 1920.

We believe the petitioner is correct in this contention. Certificates of stock are mere evidences of ownership of the stock. *Richardson* v. *Shaw*, 209 U. S. 365; *Sinnott* v. *Hibernia National Bank*, 105 La. 705; 30 So. 233. Where an actual sale has been made and title to the stock has passed, the purchaser is a stockholder although no certificate has been issued to him. *Galbraith* v. *McDonald*, 133 Minn. 208; 143 N. W. 353; secs. 4330, 4331, 4332, Thompson on Corporations; Uniform Stock Transfer Act, sec. 1.

The undisputed evidence in this proceeding is that on February 6, 1920, Weber bought 142½ of the 175 shares of the Rice Co. held by Lanz. It further appears that Weber bought 100 shares of this stock for himself and 42½ shares for the Powell Co., and that on October 31, 1920, Weber had the entire 142½ shares transferred on the books of the Rice Co., first to himself and then to the Powell Co. The 142½ shares constituted 14.25 per cent of the stock of the Rice Co.

With the elimination of Lanz in the manner described, the " same interests owned 93.99 per cent of the stock of petitioner and 95.75 per cent of the stock of the Rice Co. The minor stockholders of petitioner then consisted of 13 persons, no one of whom held more than 1.34 per cent of petitioner's stock. The minor stockholders of the Rice Co. were Lanz, holding 32½ shares (3.25 per cent) and W. J. Uncle, holding 10 shares (1 per cent). Upon consideration of the whole record we are of opinion that the stock ownerships mentioned constituted ownership of substantially all of the stock of the two companies by the same interests, and, therefore, that the two companies were affiliated for the period February 7 to October 31, 1920. The respondent, upon exactly the same stockholdings, has determined that the affiliation existed for the remainder of that calendar year.

Petitioner suggests that since February 6 is close to the beginning of the calendar year, the Board should find that affiliation existed for the entire calendar year. We do not believe that the Board could properly take such action. Clearly, events might have occurred priod to the effective date of the affiliation which would have a substantial effect upon the tax liability of the affiliated group. Furthermore, we have no evidence of stock interest prior to January 15, 1920.

Petitioner further asks a determination of the number of returns to be filed by it and the Rice Co. for the year 1920. The Rice Co. is not a party to this proceeding and its individual tax liability is not before us for adjudication. In accordance with our decision in *American La Dentelle, Inc.*, 1 B. T. A. 575, we hold that petitioner should file a separate return for the period January 1 to February 6, 1920, and that a consolidated return of petitioner and the Rice Co. should be filed for the period February 7 to December 31, 1920.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*